Dear Sen. Marionneaux:
You requested an Attorney General's opinion regarding the Louisiana Motion Picture Incentive Act in effect prior to December 31, 2005 (the "Act" or "Act 456") and the certifications issued by the Louisiana Department of Economic Development ("DED") and Governor's Office of Film Television Development ("GOFTD") for multi-production "aggregates" under that Act. You indicate that the Act created tax credits for investors in "state-certified productions", which means a motion picture approved by the GOFTD and the DED and produced by a Louisiana company. The GOFTD must submit an initial certification of a project to the investors and the Department of Revenue and include a unique identifying number for each state-certified production. The initial certification gives the motion picture industry written assurance of tax credits in advance so that production budget and location decisions can made. Often these decisions take one to two years, thus it is crucial that producers be able to rely on the certifications.
You advise that projects initially certified by GOFTD and DED sometimes consist of more than one motion picture. Such a certification is commonly referred to as an "aggregate" because the investment in all of the motion pictures included in the project is aggregated for the purpose of the investment levels, which determine the tax benefits earned under the Act. The Act, as of 2003, required that DED and GOFTD "shall promulgate rules" which rules must first be approved by the House Committee on Ways Means and the Senate Committee on Revenue Fiscal Affairs. To date, three years subsequent to the Act, no rules have ever been promulgated.
For projects certified in 2004 and 2005, each investor in a state-certified production received a tax credit based upon a percentage of the total production budget, no matter where it was spent, but in no case would the tax credit exceed the total expenditures in Louisiana. Act No. 456 of the 2005 Regular Session changed the calculation of the tax credits effective January 1, 2006 by providing that an investor receive a tax credit of a percentage of only the expenditures in Louisiana. Act 456 provided that it did not apply to state-certified productions that received an effective initial certification prior to December 31, 2005. *Page 2 
You state that On December 28, 2005, Pelican Film Fund I, LLC ("PFF") applied to DED and GOFTD for initial certification of project consisting of a slate of motion pictures expected to cost about $200,000,000. On December 30, 2005, the DED and the GOFTD sent a letter to the investor certifying for the purpose of section 47:6007(C)(1) that the base investment of a production would include all of the slate of productions produced, financed and/or distributed by PFF twelve months before and twelve months after approval by the DED and the GOFTO of the production for which the base investment was being calculated.
According to your opinion request, in 2006, PFF requested that two productions be substituted for motion pictures on the PFF slate under the December 30, 2005 certification letter: "When The Levees Broke: A Requiem in Four Acts" ("Levees") and "What Just Happened," ("WJH"). Levees requested certification as a substitution for "Catwalks". On July 11, 2006, DED and GOFTD indicated that they were unaware of any production certified under the old law for which pre-production and/or principal photography and associated expenditures occurred before 2006. In September 2006, DED and GOFTO issued a letter for "Levees" stating they were well aware that the production had started in 2005, just after Hurricane Katrina. DED and GOFTD refused to certify "Levees" under PFF aggregate.
You further advise that on October 10, 2006 WJH requested certification as a substitution for "North of Nowhere". On November 13, 2006 WJH requested certification on its own, not as a part of PFF aggregate certification, based on having done substantial pre-production activities in 2005. On November 15, 2006, DED denied the request for WJH based upon the opinion of outside counsel that the December 30, 2005 letter did not constitute a state-certification for the project and that PFF could not substitute a motion picture in place of similar ones listed in the addendum.
Based upon the foregoing, your questions are as follows:
 1. The letter issued by DED and GOFTD on December 30, 2005 to Pelican Film Fund I, LLC constitutes an "initial certification" under Section 2 of Act 456 of 2005 for PFF as a "state-certified production" as defined in La.R.S. 47:6007.E and that PFF and all of its productions are qualified for the Motion Picture Investor Tax Credit pursuant to La.R.S. 47:6007, the Employment Tax Credit pursuant to La.R.S. 47.1125.1, and the Sales and Use Exemption pursuant to La.R.S. 47:1124 and La.R.S. 1125, all pursuant to legislation in effect prior to December 31, 2005; and
 2. That the letter referenced above, as an "initial certification" of PFF under Section 2 of Act 456 of 2005, allows PFF to substitute one or more different motion pictures for, and/or add motion pictures to, the initial addendum approved in the letter, all of which constitute "initial certifications", as defined in La.R.S. 47:6007(B), of state-certified productions qualified for the Motion Picture Investor *Page 3 
Tax Credit pursuant to La.R.S. 47:6007, the Employment Tax Credit pursuant to La.R.S. 47.1125.1 and the Sales and Use Exemption pursuant to La.R.S. 47:1124 and La, R.5. 1125, all pursuant to legislation in effect prior to December 31, 2005.
You first question whether the December 30, 2006 letter issued by DED and GOFTD to PFF ("PFF Letter") constitutes an "initial certification" pursuant to legislation in effect prior to December 31, 2005.
As you indicated, the provisions of Act 456 of the 2005 Regular Session ("Act 456") changed the tax incentives for the production of motion pictures. The motion picture tax credit was revised to restrict the tax credits production expenditures incurred in Louisiana. Pursuant to Section 2 of Act 456, only those productions which received an effective initial certification prior to December 31, 2005 are eligible for the tax incentives in effect prior to January 1, 2006. Section 2 of Act 456 provides:
 This Act shall become effective for taxable years beginning after December 31, 2005, and shall not apply to state-certified productions that have received an effective initial certification date that is prior to December 31, 2005. For state-certified infrastructure projects, this Act shall become effective on or after July 1, 2005. (Emphasis added)
We note that at the time the letter was written, La.R.S. 47:6007D(2)(a) provided:
 The Governor's Office of Film and Television Development shall submit its initial certification of a project as a state-certified production to investors and to the secretary of the Department of Revenue. The initial certification shall include a unique identifying number for each state-certified production.
According to DED, letters such as the December 30, 2006 letter to PFF were "pre-certification" letters, which are subject to certain conditions. The PFF Letter contained an addendum which listed a slate of several productions with unique identifying numbers for each production. Thus it would appear that the PFF Letter would be an "initial certification". As indicated, Section 2 of Act 456 provides that Act 456 shall not apply to state-certified productions that received an "effective initial certification" prior to December 31, 2005. While the PFF Letter appears to be an "initial certification", the conditions contained in the PFF Letter must have been met in order for the "initial certification" to be effective. Whether PFF met the requirements set forth in the PFF Letter, is a question of fact which would have to be determined by a trier of fact (judge or jury). However, if the conditions of the PFF letter were met, it is our opinion that the PFF Letter would be an effective initial certification of those specific productions listed in the addendum for purposes of Section 2 of Act 456.
As for your second question, you ask whether the PFF Letter allows PFF to substitute *Page 4 
and/or add to motion pictures listed in the initial addendum, and whether such substitutions or additions constitute an "initial certification" prior to December 31, 2005.
We will address the second part of this question first. We note that the statutes do not specifically address the substitution and/or addition of productions to an aggregate. While the law does not prohibit the substitution and/or the addition of productions, Act 456 does limit the applicability of the tax incentives in effect prior to January 1, 2006. As we have indicated, only those productions which received an effective initial certification prior to December 31, 2005 are eligible for the tax incentives in effect prior to January 1, 2006. Thus regardless of whether DED and GOFTD policies and procedures allow PFF to substitute and/or add productions to the addendum, only those productions which received an effective initial certification prior to December 31, 2005 would be eligible for tax credits in effect prior to January 1, 2006. Simply put, even if PFF were allowed to substitute productions, the new/substitute productions are not eligible for the tax incentives in effect prior to January 1, 2006 unless they received an effective initial certification prior to December 31, 2005.
We next address the question of whether the PFF Letter allows PFF to substitute and/or add films to the initial list of films included on the addendum to the PFF Letter. The addition of a production would simply be the certification of another production. It seems that the approval of a substitution would essentially be a certification of one production in place of another production. Because of this, it is our opinion that substitutions and additions would be governed by the same provisions as certifications. As you are aware, La.R.S. 47:6007 requires DED and GOFTD to determine, through the promulgation of rules, what projects qualify for certification. Prior to January 1, 2006, La.R.S. 47:6007(D)(1) provided:
D. Certification and administration.
 (1) The secretary of the Department of Economic Development and the Governor's Office of Film and Television Development shall determine through the promulgation of rules what projects qualify according to this Section. Prior to adoption, these rules shall be approved by the House Committee on Ways and Means and the Senate Committee on Revenue and Fiscal Affairs.
As of January 1, 2006, La.R.S. 47:6007(D)(1) provides:
D. Certification and administration.
 (1) The secretary of the Department of Economic Development and the Governor's Office of Film and Television Development shall determine through the promulgation of rules what projects and expenses including amounts expended in this state on state-certified infrastructure projects qualify according to this Section. . . *Page 5 
As you have indicated, DED and GOFTD have not yet promulgated rules as required by statute, which they should do as soon as possible. However, DED and GOFTD indicate that they do have policies and procedures in place regarding the substitution of productions. According to DED and GOFTD, substitutions are only allowed if the substitute production relates back to the original production, meaning the substitute production is produced by the same company, has the same investors, is based upon the same script/idea as the original production and meets the terms and conditions of the original initial certification. PFF has indicated that DED and GOFTD have not always followed the above policies and procedures, and have allowed substitutions under circumstances where these policies and procedures were not met. Whatever DED and GOFTD's policies and procedures are, they must be applied fairly and uniformly to all applicants and/or productions. In other words, whatever rules apply to one production/applicant must apply to all other productions/applicants.
Whether PFF is entitled to substitute films under the policies and procedures in place, and whether DED and GOFTD have applied their policies and procedures on a consistent basis, are questions of fact which can't be determined by our office. However, we note that DED and GOFTD determined that the productions PFF wanted to substitute didn't meet the requirements established for substitution. If PFF feels that DED and GOFTD acted in an arbitrary and capricious manner, or that PFF is otherwise aggrieved by this determination, its recourse is to see judicial review of DED and GOFTD's determinations.[1] If PFF feels that DED and GOFTD acted in a fraudulent manner, we suggest PFF file a complaint with the State Inspector General.
Trusting this adequately responds to your request, we remain
 Yours very truly, CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: _____________________________ KENNETH L. ROCHE, III Assistant Attorney General
 CCF, JR/KLR, III/crt
[1] According to DED and GOFTD there is no internal appeals process for challenging this determination. Thus, it would appear that PFF has exhausted its administrative remedies and may seek judicial review of DED and GOFTD's determination.